UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. LUTZ,

        Plaintiff,

vs.

PATRICK R. DONAHOE,

        Defendant.
_____/

Civil Action No.
13-CV-11335

Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION

Plaintiff Michael J. Lutz filed this lawsuit against Patrick R. Donahoe, the Postmaster General of the United States, alleging that he was demoted, denied merit pay, denied a request for a light work assignment, and denied a reasonable accommodation, based on his gender and disability (a back impairment), and in retaliation for prior protected activity.[1]  Plaintiff's claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

Now before the Court is Defendant's motion for summary judgment.  The matter is fully briefed.  Upon review of the parties' submissions, the Court concludes that oral argument would not aid the decisional process.  *See* E.D. Mich. LR 7.1(f)(2).  For the reasons that follow, Defendant's motion will be granted.

---

[1] After initiating this lawsuit, Plaintiff voluntarily dismissed all claims relating to his demotion. *See* Page ID 147.

## II.  BACKGROUND

Plaintiff worked for the United States Postal Service during the time period relevant to this lawsuit.  In December 2002, Plaintiff was demoted from working as a "Level 15" postmaster at the Pleasant Lake Post Office in Pleasant Lake, Michigan, to working as a "Level 4" mail handler at the Ann Arbor Post Office in Ann Arbor, Michigan.  The ultimate decision to demote Plaintiff was made by John H. Talick.  Mr. Talick gave three reasons for Plaintiff's demotion: (1) Plaintiff failed to discharge his assigned duties by failing to follow established postal procedures for collecting debts owed to the Postal Service; (2) Plaintiff engaged in nepotism by allowing his daughter to work with him in the Pleasant Lake Post Office; and (3) Plaintiff failed to manage the Pleasant Lake branch in an efficient and productive manner.  Page ID 210-215.

Also in December 2002, Plaintiff's supervisor at the time, John Hartley, gave Plaintiff an "unacceptable" rating for his merit performance evaluation covering the 2002 fiscal year.  Page ID 218.  The unacceptable rating meant that Plaintiff could not receive merit pay for that fiscal year.  Page ID 305.  Merit pay is a monetary amount to reward employees for their good performance.  *Id.*  Mr. Hartley attested in his sworn declaration that he gave Plaintiff the unacceptable rating as a result of the three instances of misconduct outlined in the preceding paragraph, and not because of Plaintiff's gender, disability, or prior protected activity.  Page ID 305-306.

Later in December 2002, Plaintiff reported to his new assignment as a mail handler in Ann Arbor, where he was supervised by Timothy Inman, the postmaster at the Ann Arbor Post Office. Page ID 247.  With the approval of Mr. Inman, Plaintiff immediately took annual leave until mid-January 2003.  *Id.*  Prior to returning to work in mid-January, Plaintiff requested a "light duty" assignment.  Page ID 266, 604.  Light duty is work that, if available, may be provided to

employees who have suffered non-work related injuries within their medical restrictions. Page ID 247. In support of his request, Plaintiff gave Mr. Inman a document listing his disabilities that were being covered by the Veterans Administration (VA). Page ID 604. Mr. Inman attested that he denied Plaintiff's request for light duty because he did not have any light duty work available within Plaintiff's medical restrictions. Page ID 247, 264. Plaintiff then requested annual leave through the end of February 2003, which was granted by Mr. Inman. Page ID 247, 604.

Mr. Inman also informed Plaintiff that he would be requesting that Plaintiff undergo a fitness-for-duty examination so that a doctor could assess whether Plaintiff's request for a light duty assignment was medically warranted. Page ID at 247. On January 30, 2003, Plaintiff was examined by Dr. George Hill, who determined that Plaintiff could "perform all duties [of a mail handler] but must wear optical assistive devices to work." Page ID 273, 605. On February 8, 2003, Mr. Inman sent Plaintiff a letter advising of Dr. Hill's conclusion and ordering Plaintiff to return to work immediately. Page ID 248, 276. According to Plaintiff, Mr. Inman "refused to accept the VA limitations that were placed on [him] and told [him] that [he] was 'faking [his] injuries from Vietnam.'" Page ID 605.

Plaintiff returned to work as ordered, and was told by his supervisor, Jeff Price, to perform work that Plaintiff felt was in violation of his VA restrictions. *Id.* Plaintiff at first refused to do the work, and received a warning letter as a result. *Id.* "Out of fear of further discipline," Plaintiff eventually attempted to do the work, but injured his neck on March 4, 2003, prompting him to submit a request for reasonable accommodations on that date. Page ID 399, 677. Mr. Inman wrote in his Equal Employment Opportunity Commission (EEOC) investigative affidavit that he denied Plaintiff's request for a reasonable accommodation because Dr. Hill found Plaintiff to be fit for duty as a mail handler. Page ID 265.

In 1996, several years before the events that led to this lawsuit, a chemical spill accident occurred at the Pleasant Lake Post Office, injuring Plaintiff – the postmaster of that branch at the time – and one other postal employee. Page ID 385. Mr. Hartley, who was post office operations manager at the time, was assigned to investigate the cause of the accident, along with two others. Page ID 386. According to Plaintiff, "Mr. Hartley acted to cover up or minimize the chemical incident" in order to "enhance his standing with Agency management." Page ID 585.[2] In 1997, Plaintiff filed a formal complaint against Mr. Hartley with the EEOC; however, the complaint itself is not in the record. The matter was settled in January 1998. Page ID 391-392.

### III. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion,

> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14 (1986). Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

*Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373 (6th Cir. 2009) (quotation marks and brackets omitted).

### IV. ANALYSIS

In this lawsuit, Plaintiff alleges that: (1) Mr. Hartley discriminated against him based on his gender and disability, and retaliated against him for his 1997 EEOC activity, when Mr. Hartley

---

[2] This statement is taken from Plaintiff's brief in response to Defendant's motion for summary judgment; Plaintiff does not point to any evidence supporting it.

gave Plaintiff on "unacceptable" rating for the 2002 fiscal year, resulting in a denial of merit pay for that fiscal year; (2) Mr. Inman discriminated against him based on his gender and disability, and retaliated against him for his 1997 EEOC activity, when Mr. Inman denied Plaintiff's January 16, 2003 request for a light work assignment; and (3) Mr. Inman discriminated against him based on his gender and disability, and retaliated against him for his 1997 EEOC activity, when Mr. Inman denied Plaintiff's March 4, 2003 request for a reasonable accommodation.

The Court concludes that Plaintiff has abandoned his gender discrimination claim. Defendant seeks summary judgment with regard to this claim; yet, Plaintiff does not so much as mention the claim in his response brief. Thus, the claim is properly deemed abandoned. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (district court properly declined to consider the merits of a claim when plaintiff failed to address it in a response to a motion for summary judgment).[3]

The Court now addresses Plaintiff's claim that Mr. Hartley discriminated against him based on disability, and retaliated against him for Plaintiff's EEOC activity in 1997, when Mr. Hartley rated Plaintiff "unacceptable," resulting in the denial of merit pay for the 2002 fiscal year.

The disability discrimination claim is brought under the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

---

[3] Two additional observations regarding Plaintiff's gender discrimination claim are appropriate. First, both Mr. Hartley and Mr. Inman attested that Plaintiff's gender had nothing to do with the challenged decisions in this case. Page ID 248-249, 306. Plaintiff does not mention his gender discrimination claim in response to Defendant's motion and thus has failed to come forward with any evidence rebutting the attestations of Mr. Hartley and Mr. Inman, making summary judgment in favor of Defendant proper. Second, so far as the Court is aware, the entire record is devoid of any evidence or even any suggestion that gender played a role in the challenged employment actions.

discrimination . . . under any program or activity conducted . . . by the United States Postal Service." 29 U.S.C. § 794(a). Plaintiff brings his retaliation claim under both the Rehabilitation Act and Title VII, both of which forbid employers from taking employment actions in retaliation for engaging in protected activity. *See* 29 C.F.R. § 33.13 ("No person may . . . retaliate . . . against any person because such person has filed a complaint, furnished information, assisted or participated in any manner in an investigation, review, hearing or any other activity related to the administration of, or exercise of authority under, or privilege secured by [the Rehabilitation Act]."); 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice [under Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].").

As Defendant correctly points out, Plaintiff's deposition testimony reveals that Plaintiff himself does not attribute Mr. Hartley's decision to give Plaintiff an "unacceptable" rating for the 2002 fiscal year to Plaintiff's disability or to Plaintiff's 1997 EEOC activity:

> Q: And what do you think is behind that nastiness you ascribed to Mr. Hartley?
>
> A: Maybe because I took over the Pleasant Lake Post Office from his girlfriend and I made it look better than what she did.
>
> Q: Any other reason?
>
> A: He just don't like me.
>
> Q: Any other reason?
>
> A: No.
>
> Q: Okay. What about you is it that you believe Mr. Hartley doesn't like?

> A: He doesn't think I was a vet[eran]. He doesn't think I did some of the things I did in the military. He says I faked a lot of my stuff.
>
> Q: Anything else?
>
> A: No.

Page ID 233. Although Defendant relied on this deposition testimony in its summary judgment motion, Plaintiff did not address it in his response brief. This testimony proves that Plaintiff himself does not believe that Mr. Hartley gave him an unacceptable rating "solely" by reason of his back impairment, which is an element of his discrimination claim under the Rehabilitation Act, *see Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011), or that Mr. Hartley's desire to retaliate was the but-for cause of his decision to give Plaintiff the unacceptable rating, which is an element of his retaliation claim under Title VII and the Rehabilitation Act. *See Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013); *Palmquist v. Shinseki*, 689 F.3d 66, 74 (1st Cir. 2012). In fact, when asked, Plaintiff entirely failed to link Mr. Hartley's animus toward him to his disability or prior EEOC activity. For that reason, the Court will grant summary judgment in favor of Defendant with regard to Plaintiff's claim that Mr. Hartley discriminated and retaliated against him by causing Plaintiff to be denied merit pay for the 2002 fiscal year.[4]

---

[4] Plaintiff's disability discrimination claim, to the extent it is based on Mr. Hartley's decision to rate Plaintiff "unacceptable" for the 2002 fiscal year, is not viable for another reason, as well. As Defendant points out, Plaintiff admitted in his EEOC investigative affidavit that he does not have any evidence that the denial of merit pay resulted from disability-based discrimination:

> 59. Why do you believe that your merit pay was denied and you were not given an opportunity to appeal that decision because of your medical conditions/restrictions?
>
> Answer: I don't have any evidence that my merit pay was denied because of my medical condition.

Page ID 263. This admission was noted in Defendant's summary judgment motion but goes

The Court now addresses Plaintiff's claim that Mr. Inman retaliated against him for his protected EEOC activity in 1997 by denying Plaintiff's January 16, 2003 request for light duty and denying Plaintiff's March 4, 2003 request for a reasonable accommodation. As Defendant correctly points out, the retaliation claim against Mr. Inman is foreclosed by the following deposition testimony of Plaintiff:

> Q: Now, as part of this [lawsuit] you claim that Mr. Inman retaliated against you. Why did he do that?
>
> * * * *
>
> A: Because I was making a mockery of his office by not doing the work that he told me to do.
>
> Q: Any other reason that Mr. Inman would retaliate against you?
>
> A: Because I was refusing his orders and I was abiding by my physical limitations that was put onto me by the VA. And I wasn't going to hurt myself to abide by him, which I don't have here.
>
> Q: Any other reason Mr. Inman would retaliate –
>
> A: Not that I know at this time.

Page ID 240. In this lawsuit, Plaintiff claims that Mr. Inman retaliated against him for his EEOC activity in 1997. However, when asked during his deposition why he believes Mr. Inman retaliated against him, Plaintiff did not so much as mention his protected activity in 1997. Because Plaintiff failed to link Mr. Inman's actions to Plaintiff's prior EEOC activity, the Court will grant summary judgment in favor of Defendant with regard to Plaintiff's claim that Mr. Inman retaliated against him.

This leaves only Plaintiff's disability discrimination claim against Mr. Inman. Plaintiff

---

unmentioned by Plaintiff in his response brief.

claims that Mr. Inman denied his requests for a light work assignment and reasonable accommodation based on his disability. As this case does not involve direct evidence of discrimination, Plaintiff bears the initial burden of demonstrating a prima facie case of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004). To meet that burden, Plaintiff must show, by a preponderance of the evidence, that: (1) he is disabled, (2) he is otherwise qualified for the job, with or without reasonable accommodation, (3) he suffered an adverse employment action, (4) the employer knew, or had reason to know, of his disability, and (5) similarly situated persons not in the protected class were treated differently. *Back v. United States Postal Serv.*, No. 99-5294, 2000 WL 353543, at *3 (6th Cir. Mar. 28, 2000); *Ferrero v. Henderson*, 244 F. Supp. 2d 821, 829 (S.D. Ohio 2002).

Defendant argues that Plaintiff cannot satisfy his burden on elements (2) and (5). With regard to the fifth element, Defendant argues that Plaintiff has not attempted to identify similarly situated employees who were treated more favorably than him, and thus his disability discrimination claim must fail. In response, Plaintiff concedes that he has not identified similarly situated employees who received more favorable treatment, stating that he "does not have access to data on potential comparable Agency employees" "[d]ue to privacy considerations." Page ID 588. In its reply brief, Defendant argues that Plaintiff's argument "overlooks several months of discovery in [this] case" during which Plaintiff could have sought information relevant to this element of his prima facie case. Page ID 857. The Court agrees with Defendant; Plaintiff does not explain why "privacy considerations" prevented him from seeking information on comparable employees during discovery in this matter, nor does Plaintiff offer evidence that he sought – but was denied due to privacy considerations – this information. Plaintiff also does not cite any authority suggesting that he is excused from satisfying this element of his prima facie case for the

9

reason asserted.   Given Plaintiff's overt failure to satisfy the fifth element of his prima facie case, the Court does not consider Defendant's arguments regarding the second element.

## V.   CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted.

**SO ORDERED**.


Dated: May 29, 2014                              s/PATRICK J. DUGGAN
                                                 UNITED STATES DISTRICT JUDGE